**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Reink KAMER, Defendant/Appellant.**

**No. 85–5013.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1985.

Decided Feb. 5, 1986.

---

Sneed, Circuit Judge, filed specially concurring opinion.

**1382**

Robert C. Bonner, U.S. Atty., Robert L. Brosio and Nancy Wieben Stock, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff/appellee.

David Hinden, Beverly Hills, Cal., for defendant/appellant.

Before SNEED, NELSON and NORRIS, Circuit Judges.

NELSON, Circuit Judge:

Defendant Reink Kamer was charged with 57 counts of conspiracy, mail fraud, and wire fraud, in violation of 18 U.S.C. sections 371, 1341, and 1343, respectively. Pursuant to a binding plea agreement with the government, Kamer withdrew his plea of not guilty and pled guilty to three counts. Kamer appeals to this court contending that the judgment must be vacated because (1) his guilty plea violated Rule 11 of the Federal Rules of Criminal Procedure in that the trial court failed to (a) ascertain whether the plea was voluntary, (b) establish the factual basis for the plea, and (c) inform Kamer of the nature of the charges against him; and because (2) his sentence did not comply with the terms of the plea agreement. Alternatively, and yet interrelated, Kamer argues that the indictment should be dismissed for failure to comply with the Speedy Trial Act because there was no basis for excludable time for trial preparation.

We vacate the district court's judgment with respect to each of Kamer's Rule 11 claims; we hold similarly with respect to his contention that his sentence did not conform to the plea agreement. We affirm, however, the district court's judgment that there was not a violation of the Speedy Trial Act.

## BACKGROUND

On October 26, 1983, a federal grand jury charged Kamer, a citizen of the Netherlands, and an American co-defendant, Bernard Whitney, with 57 counts of conspiracy, mail fraud, and wire fraud, in violation of sections 371, 1341, and 1343 of Title 18 of the United States Code. The indictment alleged that Kamer and Whitney jointly owned and operated entities which sold American land at greatly inflated prices to European investors. Apparently, it was not disclosed to investors that the land was inappropriate for large-scale development and that Whitney and Kamer lacked the expertise and financing to insure development. In fact, Kamer and Whitney

made no effort to develop the properties, and the prices charged for the land were such that it was highly unlikely that any of the investors could ever make a profit. Investors were also misled about potential sources of financing for the projects and about placement of their money in trust accounts. As a result of this scheme, investors lost millions of dollars.

After extradition from Europe, Kamer was arraigned on July 10, 1984. Trial was set for September 18, 1984, but on August 23, 1984, despite Kamer's objections, his appointed Deputy Public Defender made an application for, and was granted, a continuance of trial until January 8, 1985. Kamer thereafter made a motion to represent himself, and the motion was granted on September 25, 1984. The Deputy Public Defender, however, was appointed standby counsel.

On December 11, 1984, Kamer, acting *pro se*, entered into a binding plea agreement whereby Kamer agreed to plead guilty to three counts. In return, Kamer would receive a maximum sentence of three years with full credit for time already served.

The trial court accepted the plea and on January 21, 1985, sentenced Kamer to sixteen months in custody with credit for time served. The trial court also imposed a five-year probationary sentence on the condition that Kamer make restitution and that he re-enter the United States only with the approval of the Attorney General.

## ISSUES PRESENTED

I. Did the trial court violate Rule 11 by failing to (A) ascertain whether the plea was voluntary, (B) establish the factual basis for the plea, or (C) inform defendant of the nature of the charges against him?

II. Did the sentence comply with the plea agreement?

III. Should the indictment be dismissed for failure to comply with the Speedy Trial Act?

## DISCUSSION

### I. THE GUILTY PLEA: RULE 11

#### A. *Failure to inform as to the nature of the charges and penalties: Rule 11(c)(1)*

Section (c)(1) of Rule 11 provides, in pertinent part:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands...:
>
> (1) the nature of the charge to which the plea is offered....

The government maintains that Kamer's "over-technical" focus on the plea proceeding ignores the overall effort made by the court *throughout the entire criminal proceedings*. The government argues that a thorough examination of the *entire record* reveals compliance with the mandates of Rule 11(c)(1). We disagree; the trial court's inquiry was wholly inadequate and thus does not comply with Rule 11.

One of the purposes of Rule 11 is to develop a complete record at the plea proceeding so as to decrease the number and facilitate the disposition of often frivolous post-conviction attacks. *McCarthy*, 394 U.S. 459 at 465, 89 S.Ct. 1166 at 1170, 22 L.Ed.2d 418 at 424 (1969). As the *McCarthy* Court noted, "[t]here is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him." *Id.* at 470, 89 S.Ct. at 1172 (emphasis in original). The dictates of Rule 11 and the federal policy of fair and efficient judicial administration require that the reviewing court look solely to the record of the plea proceeding. *United States v. Coronado*, 554 F.2d 166, 170 n. 5 (5th Cir.1977) ("[C]laims of noncompliance with rule 11 must be resolved solely on the basis of the rule 11 transcript. That transcript provides all that is needed and all that is allowed for the resolution of such claims."); Fed.R.Crim.P. 11(h) advisory committee note (1983 Amendment) (same). *See also United States v. Dayton*, 604 F.2d

931, 939 (5th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980) ("it will be a rare case and one that we cannot presently envision in which we look beyond the transcript of the arraignment in passing on an appeal after a guilty plea."). The requirement that the trial judge adequately inquire of the defendant, at the plea proceeding, as to the nature of the charge effectuates the purposes of Rule 11 and the policy of efficient judicial administration. The government's contention that this court should review the *entire* record, therefore, is baseless.

In his prepared pre-sentencing statement to the court, Kamer declared in conclusory fashion that he violated several sections of the United States Code. Kamer's statement, however, does not indicate that he, in fact, understood the charges to which he pled. Nevertheless, the trial judge discussed with Kamer the nature of the charges only to the extent of the following colloquy:

THE COURT: You understand the nature of the charges here against you, I think, very thoroughly, because the statement you just made demonstrates that. You don't have any questions about what the nature of the charges are?

DEFENDANT KAMER: After fourteen months, no more.

Clearly, the sufficiency of any particular colloquy between the judge and the defendant as to the nature of the charges will "vary from case to case, depending on the peculiar facts of each situation, looking to both the complexity of the charges and the personal characteristics of the defendant, such as his age, education, intelligence, the alacrity of his responses, and also whether he is represented by counsel." *United States v. Wetterlin,* 583 F.2d 346, 351 (7th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). In the instant case, the district court judge neither caused the indictment to be read, *see United States v. Punch,* 709 F.2d 889, 892–94 (5th Cir.1983) (in non-complex cases, a reading of the indictment *may* suffice);

*Dayton,* 604 F.2d at 938 (same); nor did he give *any* explanation as to the nature of the charges to which the plea was offered. *See Wetterlin,* 583 F.2d at 350–52; *Irizarry v. United States,* 508 F.2d 960, 965–66 (2nd Cir.1974) (trial judge should at least set out the bare bones elements of the offense). *See also McCarthy,* 394 U.S. at 467 n. 20, 89 S.Ct. at 1171 n. 20.

In *Wetterlin,* the Seventh Circuit vacated a guilty plea to a complex conspiracy charge for failure to ascertain whether the defendant understood the nature of the charges. Similar to the case *sub judice,* the Court of Appeals observed that "the judge made no effort to explain the law of conspiracy generally or by reference to the specific charge of this case, nor did he personally inquire and determine that the defendant understood the nature of the charges." 583 F.2d at 350 (footnote omitted).

Granted, Kamer exhibited above-average intelligence. As the trial judge noted, however, this was a complex case. And, although there was standby counsel, Kamer essentially represented himself. That Kamer did not fully appreciate the nature of the charge against him is reflected in his conclusory and somewhat contradictory prepared statement to the court. Indeed, the statement tends to evidence a misunderstanding of the alleged offenses and their requisite elements. The charged offenses all require a showing of specific intent. *See United v. Clevenger,* 733 F.2d 1356, 1358 (9th Cir.1984); *United States v. Andreen,* 628 F.2d 1236, 1248 (9th Cir. 1980). Nonetheless, reading from his declaration to the court, Kamer stated that he was advised that United States law was not applicable to his activities and that mail fraud and wire fraud are unknown to the Netherlands. These remarks, coupled with Kamer's conclusory admission to criminal nondisclosure "because of [his] culpable ignorance of the necessity of disclosing information of that sort," should have alerted the judge to the fact that Kamer may not have pled guilty with a full awareness of the nature of the charges. *See McCarthy,*

394 U.S. at 470, 89 S.Ct. at 1172; *Punch,* 709 F.2d at 893–94.

It is incumbent upon a district judge accepting a plea to make the minor investment of time and effort necessary to set forth the meaning of the charges and to demonstrate on the record that the defendant understands. "There is no excuse for failing to undertake procedures of such utility in ensuring voluntary and intelligent pleas that are susceptible to meaningful review." *Coronado,* 554 F.2d at 172. Under the circumstances, the trial judge should not have accepted Kamer's plea until his understanding was manifest. A district court should not rely upon a *pro se* defendant's bald representation that he does not have any questions. Rather, the trial judge is required to engage in a colloquy with the defendant and elicit responses from him which demonstrate, on the record, that the accused does so understand. Accordingly, we agree with the *Wetterlin* court that

> the judge should not have assumed that the defendant already knew and understood what the charges were, but rather the court should have assumed he was ignorant of the charges and thus used the hearing to inform the defendant "of some aspects of legal argot and other legal concepts that are esoteric to an accused."

583 F.2d at 350 (quoting *Coronado,* 554 F.2d at 172. *See also McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171 (Rule 11 is not followed when, instead of personally inquiring of the defendant, the district judge

resorts to "assumptions" as to the defendant's understanding).[1]

### B. *Failure to inquire as to voluntariness: Rule 11(d)*

Section (d) of Rule 11 provides that "the court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement."

The government asserts that after weeks of vigorous negotiations with Kamer, all of which were summarized and memorialized on the record, the trial judge had a sufficient basis for finding that Kamer's plea was entered voluntarily and free from any sort of influence. This contention, however, is legally unfounded. Although the trial judge may have satisfied himself that Kamer's plea was indeed voluntary, Rule 11 "expressly requires the court to address the defendant personally in the course of determining that the plea is made voluntarily . . . ." Fed.R.Crim.P. 11, Notes of Advisory Committee on Rules, 1966 Amendment. "[T]he Rule is intended to produce a complete record *at the time the plea is entered* of the factors relevant to this voluntariness determination." *McCarthy,* 394 U.S. at 465, 89 S.Ct. at 1170 (emphasis added).

The transcript of the plea proceeding is absolutely devoid of any inquiry. As discussed in Section I.A, *supra,* by developing a complete and searching record, the trial court can, and should, ensure the thor-

---

1. This case is distinguishable from the situation that was presented in *United States v. Coronado,* 554 F.2d 166 (5th Cir.1977). Although admonishing the trial judge for "fail[ing] sufficiently to make the required explication of the charges," the *Coronado* court found no reversible error because the Rule 11 transcript, "as a whole," made clear that Coronado had the requisite understanding. 554 F.2d at 173. On the present transcript, however, with the exception of Kamer's prepared presentencing statement (which, as we previously stated, demonstrates a lack of understanding), there is nothing which this court can review to discern substantial compliance with Rule 11(c)(1). We conclude, therefore, that the error here is not harmless.

> There would *not* be harmless error under subdivision (h) where, for example, as in *McCarthy,* there had been *absolutely no inquiry* by the judge into defendant's understanding of the nature of the charge and the harmless error claim of the government rests upon nothing more than the assertion that it may be "assumed" defendant possessed such understanding merely because he expressed a desire to plead guilty.
>
> Fed.R.Crim.P. 11(h) advisory committee note (1983 Amendment) (first emphasis added; second emphasis in original).

ough and effective administration of justice. Evidently, the trial judge found Kamer's plea to have been made voluntarily. On the bare record before us, however, we cannot adequately perform a review of the district judge's determination. When, as here, we are unable to establish, beyond doubt, that the defendant voluntarily entered his plea, we have no choice but to find noncompliance with Rule 11(d).[2]

### C. *Failure to establish a factual basis for the plea: Rule 11(f)*

Kamer's alleged violation of sections 371, 1341, and 1343 all derive from a failure to disclose material facts. *See United States v. Mandel*, 591 F.2d 1347, 1363 (4th Cir. 1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). Kamer argues that the plea must be vacated because the court did not make "such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.Crim.P. 11(f). Specifically, he alleges that there was insufficient evidence of intent to defraud, a requisite element of the offenses to which he pled guilty. *See United States v. Clevenger*, 733 F.2d 1356, 1358 (9th Cir.1984); *United States v. Andreen*, 628 F.2d 1236, 1248 (9th Cir.1980).

In *McCarthy*, the Supreme Court observed, Rule 11(f) requires the court accepting the plea of guilty to make an "examination of the relation between the law and the acts the defendant admits having committed, a task designed to expose the defendant's state of mind on the record through personal interrogation...." *McCarthy*, 394 U.S. at 467, 89 S.Ct. at 1171).

As noted in I.A., *supra*, Kamer was apparently under the impression that U.S. law was not applicable to his activities. Moreover, he expressed that the offenses involved herein are unknown to his country, "[a]nd for that reason, [Kamer] was unaware of the possibility of such a viola-

tion." These statements, uncontroverted by the government, tend to negate a showing of the requisite scienter.

▇▇▇▇▇ Kamer's alleged violation of sections 371, 1341, and 1343 all derive from a failure to disclose material facts. *See Mandel*, 591 F.2d at 1363. Absent a duty to speak, however, nondisclosure does not rise to criminal proportions. *See id.* at 1362–63. Kamer's statements indicate that he was advised he owed no such duty. His failure to disclose, therefore, may not have been motivated by an intent to deceive. From the present record, "we cannot infer that [Kamer] had, beyond doubt, the specific intent to defraud." *United States v. McDonald*, 576 F.2d 1350, 1359 (9th Cir.), *cert. denied sub nom. Stewart v. United States*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 *and cert. denied sub nom. Bresbis v. United States*, 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978). Accordingly, we hold that the court below failed to comply with Rule 11(f).

## II. THE SENTENCE: COMPLIANCE WITH PLEA AGREEMENT

Kamer entered his guilty plea pursuant to a written plea agreement conditioned upon acceptance by the court in conformance with Rule 11(e)(1)(A) and (C). The written plea agreement provided that Kamer would enter a guilty plea to counts 1, 2, and 21 of the indictment, and in return, "[t]he maximum sentence imposed by the Court shall be three (3) years or less, with full credit for time served since October 11, 1983." On December 11, 1984, the court accepted the agreement. When sentenced on January 21, 1985, however, Kamer received 16 months imprisonment with credit for time served and was placed on probation for five years. The court further imposed as conditions of probation that Kamer "make restitution as ordered by the probation office or the court," that he not re-enter the United States "without the

---

**2.** If it is elsewhere evidenced, a trial judge's failure to demonstrate *on the Rule 11 transcript* that a defendant's plea was voluntary may be harmless error. *See* Fed.R.Crim.P. 11(h).

Here, however, we cannot discern voluntariness from even the *entire record.* Therefore, we need not decide that issue now.

permission of the Attorney General or an authorized agent thereof," and that he "report to the nearest probation office within forty-eight hours" of re-entry. Kamer complains that the sentence imposed fails to comply with the terms of the agreement.

■ Plea agreements are subject to contract-law standards of interpretation. *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979). As this court previously stated:

> In determining whether a plea agreement has been broken, courts look to "what was 'reasonably understood by [the defendant] when he entered his plea of guilty.'" *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979) (quoting *United States v. Crusco*, 536 F.2d 21, 27 (3d Cir.1976)). If disputed, the terms of the agreement will be determined by objective standards.

*United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir.1984). In order to determine whether the sentence imposed comports with the reasonable understanding and expectations of the defendant as to the sentence for which he had bargained, we look to the objective proof on the record.

As previously mentioned, the written plea agreement refers to a "maximum sentence" of three years or less, but is silent as to any probationary term. The government argues that imposition of the probationary term did not breach the plea agreement because Kamer's only desire was to avoid *incarceration* of more than three years. *See Gammarano v. United States*, 732 F.2d 273, 276 (2d Cir.1984). The government further contends that the probationary term should stand even if probation exceeded Kamer's expectations. Essentially, the government asserts that the plea agreement was silent on this issue because probation is not part of a "sentence." Therefore, it claims that Kamer unreasonably concluded that probation could not be imposed.

The government contends that *Gammarano* supports its claim that Kamer intended only to avoid *incarceration*. *Gammarano*, however, is distinguishable on its facts. Determining the "reasonable understanding and expectations of the parties," the *Gammarano* court looked to counsel's argument at the sentencing hearing and Gammarano's reaction immediately after the sentence had been imposed. 732 F.2d at 276. The court stressed the fact that counsel had "argued eloquently in favor of a noncustodial term," that Gammarano and his counsel thanked the court after sentencing, and that he did not immediately file a direct appeal. *Id.* The Second Circuit interpreted Gammarano's behavior as objective "evidence that his reasonable expectations [that he would not be incarcerated for more than two years] had been fulfilled." *Id.*

By contrast, Kamer filed a notice of appeal immediately after the sentence was imposed. Also unlike *Gammarano*, nowhere in the record is there *any* reference by anyone to a noncustodial term prior to actual sentencing. *See* 732 F.2d at 276. Finally, while the record does not indicate that Kamer objected at the time sentence was imposed, he was acting as his own counsel and may not have believed that oral objection was appropriate at the time. *See id.* Accordingly, Kamer appears reasonably justified in expecting the sentence to comply with the "literal terms of the agreement." *Travis*, 735 F.2d at 1132.

■ There appears to be a split in the circuits regarding the government's contention that probation is not a "sentence,".[3]

---

3. *Compare Sims v. United States*, 607 F.2d 757, 759 (6th Cir.1979) (imposition of five-year prison term upon revocation of probation for two years is not double jeopardy because defendant "had not been sentenced"); *United States v. Becker*, 536 F.2d 471, 473 (1st Cir.1976) ("probation and sentence are separate and distinct"); *United States v. Fultz*, 482 F.2d 1, 4 (8th Cir. 1973) ("Probation ... is in no sense a sentence as that term is used in the [Probation] Act") *with United States v. Condit*, 621 F.2d 1096, 1098 (10th Cir.1980) ("for purposes of 28 U.S.C. § 2255 and 18 U.S.C. § 3653 ... probation is merely one form of sentence"); *United States v. Rodgers*, 588 F.2d 651, 654 (8th Cir.1978) ("probation is a sentence within the meaning of 18 U.S.C. § 3653"); *Nicholas v. United States*, 527 F.2d 1160, 1162 (9th Cir.1976) ("probation is a

However, we find Judge Wisdom's analysis in *Smith v. United States*, 505 F.2d 893 (5th Cir.1974), instructive. Writing for the Fifth Circuit, he explained: "In determining whether probation is properly defined as a 'sentence,' we avoid needless terminological distinctions of artificial origin; we focus on the reality of probationary status." 505 F.2d at 895. We similarly urge that antiquated semantic distinctions be laid aside. "Probation and similar dispositions are, and should be viewed as, sentences just like any other disposition following conviction.... Probation is an attempt by society to impose a sanction that will accomplish its goals, just as any other sentence is." III A.B.A., *Standards for Criminal Justice* 18.80 (1980). We are of the opinion that within the plea bargaining context, where the reasonable understanding and expectations of the parties prevail, probation is commonly understood to be a sentence.

■■■ Our conclusion that probation is a sentence within the plea bargaining context is further supported by the Second Circuit's holding in *United States v. Burruezo*, 704 F.2d 33 (2d Cir.1983). The defendant in *Burruezo* entered into a plea agreement with the government. The government agreed that "any prison sentences imposed on [the] pleas of guilty shall not exceed ten years." *Id.* at 34. At sentencing the trial court imposed "imprisonment for eight years with a consecutive five-year term of probation, $3,000 in fines, and a requirement that [defendant] make restitution." *Id.* at 35. The Second Circuit vacated the district court's judgment, however, observing that "the court did not follow the sentencing limitations incorporated in the plea arrangement: the sentence imposed was materially different from the terms of the agreement because the possible length

of sentence exceeded ten years (including the period of probation)...." *Id.* at 38.

It is not uncommon for probation to be one of the considered elements of a plea bargain. Thus, failure to expressly provide for a probationary term must be construed as an intentional omission designed to preclude its imposition.

*Burruezo* additionally suggests that the district court's imposition of restitution likewise amounts to a breach of the plea agreement. There, the appellate court found that "the comparative magnitude of the amount of restitution [$400,500] ... created a material change in the plea bargain." 704 F.2d at 38 (quoting *United States v. Runck*, 601 F.2d 968, 970 (8th Cir.1979), *cert. denied*, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980)). In *Runck*, the district court judge imposed as a condition of probation restitution of $87,-400. The *Runck* court reversed because, as in *Burruezo* and the instant case, the plea agreement was silent on the issue of restitution:

> While the condition of restitution of a small amount might be acceptable because it would not necessarily materially alter the expectations of the parties to the bargain, restitution of a large amount should have been part of the plea bargain or the possibility of its inclusion as a condition or probation made known and agreed to by the bargainers.

601 F.2d at 970.

Here, the written plea agreement fails to mention restitution. Nonetheless, the government urges that throughout the negotiations Kamer was aware of the possibility of its imposition. The record, however, indicates to the contrary; several times the court seemed to indicate that restitution would *not* be ordered.[4] Further, subsequent to signing the plea agreement Kamer told the judge it was his

---

'sentence' within the meaning of section 3653"); *Napoles v. United States*, 536 F.2d 722, 725 (7th Cir.1976) ("probation is a sentence within the meaning of the provisions of § 2255 and § 3653"); *Smith v. United States*, 505 F.2d 893, 895 (6th Cir.1974) ("probation is a sentence like any other sentence").

4. At one point the court told Kamer that "it's not likely that there would be material financial conditions attached to whatever happens here, okay?"

understanding that no restitution would be imposed.

Restitution, here, is presumably in the millions. Under the circumstances, we agree that "[i]f restitution of less than $90,000 [in *Runck* ] is material enough to demand express inclusion in a plea agreement, it follows ineluctably that restitution of some [one million-plus] must likewise be included." *United States v. Garcia,* 698 F.2d 31, 36 (1st Cir.1983) (restitution in amount of $900,000 is material alteration of plea agreement).

With respect to the court's imposition of re-entry restrictions, the government maintains there is no material variance with the plea agreement since Kamer would already be subject to such restrictions as a general matter of law. The government, however, appears only partially correct. Present law enables the Attorney General to exclude aliens who have been convicted of crimes involving moral turpitude. 8 U.S.C. § 1182(a)(9) (1970 & 1985 Supp.). Moreover, Kamer's offense would be considered a crime of moral turpitude within the meaning of section 1182. *See McNaughton v. Immigration and Naturalization Service,* 612 F.2d 457 (9th Cir.1980) (fraud is a crime involving moral turpitude).

■■■ Accordingly, ordering Kamer "not to enter the United States without the permission of the Attorney General or an authorized agent thereof" merely subjects Kamer to conditions he was already required to obey. The imposition of this restriction, therefore, is harmless error.

As to the requirement that Kamer report to a probation office within 48 hours of re-entry, however, the government cites no authority for the proposition that Kamer would have been required to do so absent the court's imposition of sentence. In light of the express language of the agreement and Kamer's expectations that probation

would not be imposed at all, we find this additional requirement to be a material breach of the bargain.

Since we agree with Kamer that the plea agreement was breached, we vacate the judgment. *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971).

## III. SPEEDY TRIAL ACT

■■■ Kamer complains that the district court erred in entering an "ends of justice" continuance pursuant to 18 U.S.C. § 3161(h)(8)(A).[5] Kamer's trial was originally scheduled for September 18, 1984. On August 23, 1984, however, Kamer's court-appointed attorney moved for a four-to-five month continuance. Counsel indicated to the court on August 29 that Kamer wanted to go to trial as scheduled, but said that if the court did not grant a continuance, counsel would be forced to withdraw because of inadequate trial preparation. The government agreed that in order to insure a fair trial, a continuance should be granted. On September 11, 1984, pursuant to a section 3161(h)(8)(A) hearing, the district court found that (1) the complexity of the case required additional time for trial preparation and (2) even if the case was not complex, Kamer's counsel needed additional time for trial preparation. Kamer does not challenge these findings, and, moreover, they do not appear to be clearly erroneous. *See United States v. Perez-Reveles,* 715 F.2d 1348, 1351 n. 2 (9th Cir. 1983) (findings that ends of justice require continuance reviewed for clear error). Rather, Kamer argues that on September 25, 1984, when his motion for self-representation was granted, his appointed counsel's need of additional time for trial preparation ceased being a factor. Accordingly, he concludes that the period between September 25, 1984, and January 8, 1985, was not properly excludable, and, therefore, a

5. Section 3161(h)(8)(A) of Title 18 provides, in pertinent part:

No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets

forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

Speedy Trial Act violation occurred. Kamer fails to note, however, that although the district court granted Kamer's motion for self-representation, the trial judge retained the appointed Deputy Public Defender as standby counsel. Contrary to Kamer's assertion, therefore, preparation of his appointed counsel did *not* cease being a factor on September 25.

 As the district judge observed, the case was a complex one. There were numerous overseas documents, most of which are in the Dutch language. And, of the more than 70 witnesses, many reside in Europe. Accordingly, we are of the opinion that the trial court's grant of an "ends of justice" continuance pursuant to 18 U.S.C. § 3161(h)(8)(A) was within its discretion, and, therefore, no Speedy Trial Act violation occurred.

## CONCLUSION

We agree with Kamer that the district court did not comply with several of Rule 11's requirements, and, thus, the judgment should be vacated. Similarly, we hold the plea agreement to have been breached and therefore vacate the judgment on this independent ground. Finally, we find no Speedy Trial Act violation and thus decline to dismiss the indictment.

Accordingly, we vacate the judgment and remand the cause to the district court for proceedings consistent with our above holdings.

SNEED, Circuit Judge, concurring separately:

I concur in Judge Nelson's opinion. I do this while harboring the belief that the appellant has represented himself in this prosecution considerably better than he would have been served by most attorneys. That belief provides no basis for affirmance, however.

Rule 11 imposes upon trial courts fairly precise formal requirements designed to reduce the opportunities for misunderstanding on the part of the defendant or the court. The price that must be paid for this benefit is an occasional reversal solely on the basis of failure to conform to the formalities. This is the usual price that must be paid if formalities are to be taken seriously, as in the instance of Rule 11 they should be. Not to pay the price leads to forfeiture of the benefits that the formalities were intended to achieve.

Formalism in the last century or so has had harsher critics than it deserved. It is reassuring to see its beneficent aspects be recognized in a setting in which that recognition is bolstered by our more honored concern for those accused of crime.