**UNITED STATES of America, Appellee,**

v.

**Joseph BURRUEZO, Appellant.**

**No. 901, Docket 82–1403.**

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1983.

Decided March 23, 1983.

Ronald G. Russo, New York City (Russo Silverman & Vitaliano, New York City, Emanuel Moore, New York City, of counsel), for appellant.

Marion Bachrach, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Mary McGowan Davis, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, CARDAMONE, Circuit Judge, and RE, Chief Judge, United States Court of International Trade.*

FEINBERG, Chief Judge:

Joseph Burruezo appeals from a judgment of conviction in the United States District Court for the Eastern District of New York, Henry Bramwell, J., after a plea of guilty to three counts of mail fraud in violation of 18 U.S.C. § 1341. Burruezo contends that his plea of guilty should be vacated because the district judge failed to comply with the procedural requirements of Fed.R.Crim.P. 11(e). The government does not oppose the relief sought. For reasons set forth below, we agree that the plea should be vacated and that Burruezo should be allowed to plead anew.

* Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

## I.

In August 1981, an indictment (the New Jersey indictment) was filed in the United States District Court for the District of New Jersey, charging Burruezo and another defendant [1] with one count of conspiracy and seven substantive counts of mail fraud. Thereafter, in June 1982, a two-count information (the New York information) was filed in the United States District Court for the Eastern District of New York, charging Burruezo and his co-defendant with two counts of mail fraud.

After his arrest, Burruezo apparently began cooperating with federal authorities in their investigation of fraud in the automobile insurance industry. Burruezo appears to have entered into a written plea agreement with the offices of the United States Attorney for the Eastern District of New York and for the District of New Jersey. In that agreement, which is not part of the record on appeal and was not before the district judge, we are told that Burruezo agreed to continue to cooperate with the federal authorities in their investigation. In return for and subject to that cooperation, the government agreed to permit Burruezo to plead guilty to both counts of the New York information and one substantive count of the New Jersey indictment. The pleas would be taken and sentence imposed in the Eastern District of New York pursuant to Fed.R.Crim.P. 20. The government also agreed, among other things, that "any prison sentences imposed on [the] pleas of guilty shall not exceed ten years." While the government made clear that it would not make specific recommendations with respect to sentencing, it agreed to bring Burruezo's cooperation to the attention of the court.

In June 1982, Burruezo appeared before Judge Bramwell for the purpose of pleading guilty. The judge proceeded to question Burruezo to make sure that the pleas to the three counts were voluntary, that Burruezo understood the various constitutional rights

he was giving up and that there were factual bases for the pleas. When the judge asked Burruezo whether he had been made any promises which had induced the plea of guilty, the prosecutor requested that the response be given at sidebar. There, on the record, the prosecutor disclosed to the court the terms of the plea agreement as follows:

MS. GIACALONE [Attorney for the government]: Pursuant to the plea agreements entered between these defendants and the Government, the Government has agreed that, with the Court's consent, of course, they will not be sentence [sic] to more than ten years in jail. That any sentence on the New Jersey indictment would be concurrent with any sentence on the Information filed in this Court, since they are both five year counts.

That there would be therefore, a ten year ceiling. In addition, that the Government dismiss the remainder of Indictment No. 81 CR 689, which is the New Jersey Indictment.

Moreover, the Government has agreed that it will not indict these defendants for any crimes committed in the course of this insurance scheme, which ran approximately one year. Which ran from August of '80 through August of '81. That the defendants agreed to cooperate and that we have agreed to make their cooperation known to the Court.

While the plea agreement was subsequently mentioned during the plea proceeding, the judge did not indicate whether he accepted the terms of the agreement, rejected its terms or believed the terms to be a nonbinding recommendation. The judge then accepted Burruezo's plea of guilty to both counts of the New York information and one count of the New Jersey indictment.

Sentencing was adjourned twice. During the first hearing regarding adjournment, a colloquy took place between Judge Bramwell and Burruezo concerning the relevance of Burruezo's cooperation to the ultimate

---

1. Burruezo's co-defendant apparently also pled guilty, and did not appeal from the judgment below.

sentencing decision. The colloquy is set forth in the margin.[2] In response to the comment of Burruezo's counsel that his client's cooperation was "extensive" and "critical . . . to the government's case," the judge responded that Burruezo's cooperation was with the government and not with the court. He stated that while cooperation was a factor to be considered, "the Court can act independently of whatever arrangements you may make with the Government. . . ." In response to the judge's inquiry, Burruezo replied that he understood what the judge had just said. However, the judge did not expressly state that he was rejecting the plea agreement, or that he was treating its terms as a non-binding recommendation so that if Burruezo persisted in his plea the plea could not later be withdrawn.

In November 1982, Burruezo appeared for sentencing. Again without indicating his view of the plea agreement, Judge Bramwell sentenced Burruezo as follows: On each of the two New York counts, Burruezo was sentenced to consecutive four-year terms of imprisonment and a fine of $1,000; on the New Jersey count, Burruezo was fined $1,000 and a five-year term of probation was imposed consecutive to the sentences on the New York counts; also, as a special condition of probation, Burruezo was ordered to make restitution. Pursuant to motion by the government, the remaining counts of the New Jersey indictment were dismissed. Thus, appellant's total sentence on the three counts was imprisonment for eight years with a consecutive five-year term of probation, $3,000 in fines, and a requirement that he make restitution.

Appellant argues that his sentence differed materially from the terms of the plea agreement in three ways. First, the term of "imprisonment" exceeded ten years—incarceration for eight years followed by a five-year term of probation. Second, the sentence on the New Jersey count was consecutive to, not concurrent with, the sentences on the New York counts. Finally, the judge ordered as a special condition of probation that Burruezo make restitution in an amount that was unspecified, although the judge did state that Burruezo's involvement in the crimes resulted in the defrauding of several automobile companies of some $400,000 in a nine-month period. Neither at the sentencing nor at any time thereafter did Burruezo bring the discrepancy between his sentence and the plea agreement to the judge's attention. Instead, he filed a notice of appeal from the judgment of conviction. Burruezo's surrender date was adjourned several times, apparently at the government's request, and we granted a further stay pending disposition of this appeal.

## II.

Appellant argues that the district court failed to follow the requirements of Fed.R. Crim.P. 11(e) in several respects and that the sentence did not accord with the agreement he made with the government. Ap-

---

2. The colloquy, in relevant part, was as follows:

THE COURT: When do you think this matter should be put over to?

MS. GIACALONE (attorney for the government): I don't know when the cooperation will be complete. I think two months would be appropriate.

THE COURT: Two months?

MS. GIACALONE: Yes.

MR. MOORE (Attorney for Burruezo): The cooperation, Your Honor, to date has been quite extensive. It's anticipated it will be quite extensive in the future. I think their cooperation is the most crucial and critical point to the Government's case.

THE COURT: What I want to do is tell the defendants that this cooperation that you have is with the Government and not with the Court. It's a consideration for the Court, but the Court can act independently of whatever arrangements you may make with the Government; do you understand that?

DEFENDANT BURRUEZO: Yes.

DEFENDANT FORDIN (the co-defendant): Yes.

THE COURT: Your cooperation is with the Government through your attorney and the cooperation is not something where you are making arrangements with the Court, where the Court is participating and promising that you must get certain treatment based on the fact that you do this. It will be for the Court's consideration as to what weight is to be given to the cooperation; all right?

(Both defendants say yes.)

pellant claims that since the terms of the plea agreement required the consent of the court, the judge should have expressly accepted or rejected the agreement; since the judge implicitly rejected the agreement, before imposing sentence, the judge should have offered the defendant the opportunity to withdraw his plea. At a minimum, even assuming that the court regarded the agreement as a non-binding recommendation under Rule 11(e), the judge should have warned Burruezo prior to his plea, as required by the rule, that the court was not obligated to follow the agreement and that Burruezo would not be able to retract his guilty plea if the court later chose not to abide by the agreement.

While this court has not addressed the issue now before us, we have made clear, in other contexts, that deviations from Fed.R. Crim.P. 11 will not be tolerated. See *United States v. Journet,* 544 F.2d 633, 636 (2d Cir.1976). We have recently stated "that on a direct appeal there will be little room for minimizing the effect of a failure to comply with Rule 11." *Del Vecchio v. United States,* 556 F.2d 106, 109 (2d Cir.1977); see Note, Rule 11 of the Federal Rules of Criminal Procedure: A New "Strict in Context" Approach, 22 B.C.L.Rev. 815, 824–28 (1981).

Criminal Rule 11(e), which in its present form is reproduced in the margin,[3] estab-

**3.** (e) Plea Agreement Procedure

(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.
The court shall not participate in any such discussions.

(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

(3) Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) Time of Plea Agreement Procedure. Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

(6) Inadmissibility of Pleas, Plea Discussions, and Related Statements. Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(A) a plea of guilty which was later withdrawn;

(B) a plea of nolo contendere;

(C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

(D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement

lishes the plea agreement procedures that are binding on the trial judge, as well as on the prosecutor and defendant. See *United States v. Blackwell*, 694 F.2d 1325, 1339 (D.C.Cir.1982). Subsection (e)(1) explicitly permits plea agreements between the government and a defendant and specifically provides for possible concessions that the government may make in a plea agreement, in addition to reduction of the charge to a lesser or related offense. See Fed.R. Crim.P. 11, advisory committee note, 18 U.S.C.App. at 1420 (1976). Thus, subsection (e)(1)(A) permits the government to move for dismissal of other charges; subsection (e)(1)(B) allows the government to make a recommendation or agree not to oppose a defendant's request on sentencing with the understanding that the recommendation or request is not binding on the court; and subsection (e)(1)(C) permits the government to agree on a specific sentence. Subsection (e)(3) states that if the court accepts the plea agreement, it must so inform the defendant on the record. However, if the court rejects the agreement, subsection (e)(4) requires the court to so inform the defendant on the record and allow him to withdraw his plea; the court must inform a defendant who persists in his plea, in the face of rejection by the court, that the ultimate disposition may be less favorable than is reflected in the plea agreement. Thus, the court *must* inform a defendant on the record whether the plea agreement is accepted or rejected. See advisory committee note, supra, at 1420–21.

In 1979, subsection (e)(2) was amended to "clarify the circumstances in which the court may accept or reject a plea agreement with the consequences specified in subdivision (e)(3) and (e)(4)." Fed.R.Crim.P. 11 advisory committee note, 18 U.S.C.App. at 1665 (1976 & Supp. III 1980). As amended, subsection (e)(2) continued to require that a plea agreement under either subsection (e)(1)(A) or (C) either be accepted or rejected by the court, and that the defendant be given the opportunity to withdraw his plea

if the agreement is rejected. However, if the government merely makes a recommendation or does not oppose a defendant's request under subsection (e)(1)(B), amended subsection (e)(2) provides that the court must advise the defendant that the recommendation or request is not binding upon the court and that the court's subsequent disapproval will not require the court to allow withdrawal of the plea. This clarifying amendment was believed necessary because of a conflict in the cases dealing with recommendations under subsection (e)(1)(B). Some courts treated a refusal to abide by a recommendation as a rejection of the plea agreement, which required that a defendant be given an opportunity to withdraw his plea. See, e.g., *United States v. White*, 583 F.2d 819, 824–25 (6th Cir.1978); *United States v. Hull*, 413 F.Supp. 145, 147 (E.D.Tenn.1976). The majority view, however, was that since a subsection (e)(1)(B) agreement is merely a recommendation, there was no agreement to "accept" or "reject" under the Rule and a defendant need not be given the opportunity to withdraw his plea. See, e.g., *United States v. Henderson*, 565 F.2d 1119, 1122–23 (9th Cir. 1977), cert. denied, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *United States v. Savage*, 561 F.2d 554, 556 (4th Cir.1977); *United States v. Sarubbi*, 416 F.Supp. 633, 637 (D.N.J.1976). The 1979 amendment to subsection (e)(2) adopted this majority view with the caveat that the defendant be advised that the agreement only contemplated a non-binding recommendation or request, and that if the defendant still wished to plead guilty, he might not be able to withdraw his plea later if the sentence was less favorable than the recommendation or request. See advisory committee note, supra, 18 U.S.C.App. at 1665. See also 1 C. Wright, Federal Practice and Procedure § 175.1 at 648–50 (1982).

The plea agreement between Burruezo and the government may have been viewed in either of two ways by the court. First,

---

if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

the judge might have believed the agreement to be a subsection (e)(1)(A) and (1)(C) agreement, explicitly requiring the court's consent, and mandating a concurrent sentence on the New Jersey count with a maximum ten-year sentence of imprisonment and dismissal of the remaining counts. On this theory, the judge was obligated to accept or reject the plea agreement either when it was first proffered to him in June 1982 or following his evaluation of the presentence report. If the judge accepted the plea agreement, under subsection (e)(2) and (3) he was required to so inform Burruezo, see *United States v. Blackwell,* supra, 694 F.2d at 1338, and not "impose a sentence greater than that agreed upon." *United States v. Mack,* 655 F.2d 843, 847 n. 4 (8th Cir.1981), quoting *United States v. Herrera,* 640 F.2d 958, 960 n. 2 (9th Cir.1981). However, if the judge rejected the agreement, under subsections (e)(2) and (4) he was required to so inform Burruezo and allow him the opportunity to withdraw his pleas of guilty. *United States v. Hammerman,* 528 F.2d 326, 332 (4th Cir.1975).

The judge may also have believed the agreement to constitute only a recommendation under subsection (e)(1)(B). In that event, the judge was obligated to inform Burruezo pursuant to subsection (e)(2) that he deemed the agreement terms to be only a recommendation and if the court chose not to accept the recommendation, the plea could not later be withdrawn as a matter of right.

Under either view, the judge did not comply with Rule 11(e). As noted above, the court did not follow the sentencing limitations incorporated in the plea arrangement: the sentence imposed was materially different from the terms of the agreement because the possible length of sentence exceeded ten years (including the period of probation), the latter was imposed as a consecutive term on the New York counts, and restitution was required as a special condition of probation. Putting aside the merit of imposing restitution in a case like this, "a plea bargain severely limits the discretion of a sentencing judge ... [and] the comparative magnitude of the amount of restitution here created a material change in the plea bargain." See *United States v. Runck,* 601 F.2d 968, 970 (8th Cir.1979), cert. denied, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980). While the judge did not specify the amount of restitution that would be required, he did indicate that some $400,000 had been defrauded through Burruezo's crime—an amount we view as "sizeable." See id.

Thus, since the judge did not incorporate the terms of the plea agreement into his sentence, he was either mistaken as to the terms of the agreement, or more probably, intended to reject the agreement or believed it to be merely a recommendation. If the judge was mistaken as to the terms, Burruezo should be permitted to plead again with the terms clearly placed before the judge. While the judge may have meant to reject the agreement, there is no evidence on the record that he ever informed Burruezo that the plea agreement was rejected and that Burruezo would have the opportunity to withdraw his plea as required by subsections (e)(2) and (4). And, if the judge regarded the agreement only as a recommendation, he did not inform Burruezo, as required by subsection (e)(2), that he was so treating the agreement and that if Burruezo continued to plead guilty, the disposition might be less favorable than the terms of the agreement. The judge's advice to Burruezo that cooperation was only one factor to be taken into account in sentencing, after the plea had been accepted, did not cure the failure to inform Burruezo explicitly that the court was treating the agreement only as a recommendation. On either theory, then, the procedural requirements of Rule 11(e) were not complied with and Burruezo is entitled to relief since he did not receive the benefit of the agreement for which he bargained with the government. See *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Under the circumstances of this

case, and in the absence of an allegation of prejudice by the government,[4] we believe vacatur of the pleas to be the appropriate remedy.

We note that rather than seek reconsideration of his sentence by post-sentence motion, Burruezo elected to file a notice of appeal immediately. While there is ordinarily no requirement that a defendant object to a violation of the plea agreement at sentencing, see *Paradiso v. United States,* 689 F.2d 28, 30 (2d Cir.1982), cert. denied, —— U.S. ——, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983); *United States v. Corsentino,* 685 F.2d 48, 50–51 (2d Cir.1982), a good deal of time and effort might have been saved if the parties had jointly brought the error in sentencing to the court's attention before Burruezo filed the notice of appeal. We trust that judges will be receptive to the opportunity to correct such errors and will either allow a defendant to plead anew or grant specific performance so that the sentence "comport[s] with the reasonable understanding and expectations of the defendant as to the sentence for which he bargained." *Paradiso,* supra, 689 F.2d at 31.

The judgment of the district court is vacated and the case remanded to allow Burruezo to plead again.[5]

---

4. In fact, as indicated above, the government does not oppose vacatur of the plea in this case since this is a direct appeal and there is no problem of prejudice due to lapse of time. The government also contends that since "the record is unclear regarding the district court's understanding of the parties' reasonable expec-

tations and intentions," Burruezo should be permitted to plead anew with a clarified record.

5. Burruezo also argues that the plea was involuntary and in violation of Fed.R.Crim.P. 11(c). In view of the disposition of this appeal it is unnecessary to reach these arguments.