**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Engin Kamil YESIL and Yalie Golan, Defendants–Appellants,**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Glenn Gert DEPPE, a/k/a "Vern" Lnu, Defendant–Appellant.**

**Nos. 91–3443, 91–3567.**

United States Court of Appeals, Eleventh Circuit.

Aug. 13, 1992.

Donald I. Bierman, Pamela I. Perry, Bierman, Shohat, Loewy & Perry, P.A., Miami, Fla., for Yesil and Golan.

Thomas M. Dawson, Leavenworth, Kan., for Deppe.

Cynthia R. Hawkins, Rick L. Jancha, Karla R. Spaulding, Asst. U.S. Attys., Orlando, Fla., for U.S.

Before KRAVITCH and HATCHETT, Circuit Judges, and BROWN *, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

## I. STATEMENT OF THE CASE

This appeal consolidates two cases, involving three defendants. Each case raises the same question: whether a district court may prevent the government from fulfilling its obligations under a plea agreement after that court has accepted the agreement and consequently not provided the defendants an opportunity to withdraw their guilty pleas. The pleas involved in these cases required each defendant to cooperate with the government and obligated the government, upon completion of such cooperation, to fully apprise the court of the nature and extent of defendants' actions. In both cases, the defendants *and* the government appeal the district court's failure to grant an evidentiary hearing on the issue of defendants' cooperation.

### A. Defendants Yesil and Golan

In August 1990 appellants Engin Yesil ("Yesil") and Yalie Golan ("Golan") pleaded guilty to an indictment charging 1) conspiracy to possess cocaine with intent to distribute and 2) distribution of cocaine. Their illegal conduct took place prior to the effective date of the United States Sentencing Guidelines (U.S.S.G.). As part of their plea agreements, defendants agreed to "cooperate fully with the government." In return, the government agreed to "advise the Court as to the nature and extent of the Defendants' cooperation."

The court set sentencing for November 21, 1990. On November 2, 1990, Yesil, Golan, and the government filed a joint motion to delay sentencing to enable Yesil

and Golan to continue their cooperation. On November 7, 1990, the district court stamped the motion "Denied and So Ordered."

After procuring letters from both the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA), the government and defendants filed another joint motion, dated November 13, 1990, to reconsider the sentencing date. The motion stated that Yesil and Golan had infiltrated a "major heroin group" of "top priority," and that their continued cooperation was necessary. The motion stressed that neither appellant had any prior involvement with heroin but had been approached by traffickers and had used the contact with the traffickers to assist the United States. Again, the court denied the motion to continue the sentencing hearing. To accommodate the DEA, however, the court delayed Yesil and Golan's reporting date.

On November 21, 1990, the district court conducted the sentencing hearing as scheduled. The agent, Greg Lees, with whom Yesil and Golan had been cooperating was present. The following discourse took place, during which the judge indicated that a future Rule 35 motion to adjust sentencing based on cooperation would be appropriate:

AUSA: Your Honor, this is Greg Lees, he's come up from South Florida to address the Court. You have some letters from him. He's the one that they're working with.

Court: *Of course, anything that happens subsequent to this would be under Rule 35 [1], I have no problem with that.*

Agent: I don't know if your Honor wants to look at this. It's just some facts and figures of what we have

---

* Honorable Bailey Brown, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. Fed.R.Crim.P. 35(b) provides:

 (b) Correction of Sentence for Changed Circumstances. The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution

of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court's authority to lower a sentence under this subdivision includes the authority to lower such sentence to a level below that established by statute as a minimum sentence.

done so far. Mr. Golan and Yesil to date have been responsible for locking up four people and taking about seven pounds of coke off the streets and a couple of vehicles.

Now, we're currently at this time trying to get into a very significant drug trafficking group down in South Florida and who are importing both cocaine and heroin, so of course we're quite interested in getting these people.

They've been very cooperative with me and have done everything that they should have.

Court: Do you need them on an ongoing investigation.

Agent: Yes, sir.

Court: For how long?

Agent: Well, that's going to be kind of up to your Honor. I would say give an approximate date of six months.

Court: All right. Reporting date.

Defense counsel: And I would point out, Judge, that as Mr. Lees can confirm, that these are all new people. In other words, they didn't just turn on their former colleagues, they had been retired and they went out and risked—

Court: Of course, they were in significantly before they retired.

Defense counsel: I understand that.

AUSA: I think these people that were not known to us, I can confirm that. They're people that we had no information on at all, but for their cooperation, we would not have known about.

Court: All right.

[End of Bench Conference]

Following the agent's testimony, the judge heard allocation by the appellants, statements by their family members, and a brief statement by the prosecutor that:

[defendants] have given good information and they've been fully cooperative with the FBI and the government does consider their assistance was of major import.

The Court then sentenced the Defendants to six years in prison, three years special parole, and a $150,000 fine. The court set a voluntary surrender date of June 1, 1991.

Subsequent to the sentencing, and pursuant to their plea agreements, Yesil and Golan continued to assist the government with drug investigations. On March 20, 1991, Yesil and Golan filed a motion, in which the government joined, for reduction of sentence pursuant to Rule 35(b). In the motion, the parties urged the court to grant an evidentiary hearing so that testimony could be presented detailing the nature and extent of cooperation by Yesil and Golan. The motion included some of the facts concerning their cooperation, but in no way detailed the full extent of their infiltration. The motion stressed the need for an *in camera* hearing due to the sensitive nature of the ongoing investigation:

Attached to this motion as Exhibit 1 and Exhibit 2 are letters from Detective Lees and Agent Bolan, setting forth the Defendants' cooperation and the fact that the Defendants are actively involved in several ongoing investigations. In view of the sensitive nature of the Defendants continuing cooperation, the letters are by necessity mere abbreviation of the Defendants' extensive activity. As such, the Defendants would request an opportunity to present in detail to the Court the nature and extent of their cooperation. *Assistant United States Attorney Cynthia Hawkins has authorized us to represent to this Honorable Court that the Government joins in the Defendants request for a hearing on this motion in order to present evidence in support of the Defendants Motion for Mitigation of Sentence.*

While security considerations prevent the Defendants from going into detail, the Defendants would point out to the Court that since their sentencing date, they have initiated at least *eleven (11) drug trafficking cases* involving in excess of approximately 22 kilo grams [sic] of cocaine and one heroine [sic] case. The Defendants have also actively engaged in continuing negotiations with drug traffickers and there may be additional information to supply to the court at the time of a hearing on this motion. Again, the various details of these cases will be

provided for the Court at an in-camera hearing.

(emphasis in original). The court denied this motion, stamping it "Denied and So Ordered." Yesil, Golan and the government then filed a joint motion for reconsideration of the court's order. That motion was also stamped "Denied and So Ordered."

On April 17, 1991, the government moved to extend the defendants' reporting date, citing the continued need for the appellants' cooperation. Four days later the district court stamped that motion "Denied and So Ordered." Yesil and Golan, who surrendered as originally ordered on June 1, 1991, remain incarcerated.

### B. Defendant Deppe

Similar facts underlie the appeal of Glenn Gert Deppe ("Deppe"). Defendant Deppe pleaded guilty to conspiracy to import 10,445 pounds of marijuana. The plea agreement provided in part that:

> At the time of sentencing, the government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation, and any other mitigating circumstances indicative of the defendant's intent to rehabilitate himself and to assume the fundamental civic duty of reporting crime.

The trial court scheduled Deppe's sentencing for June 20, 1990.

On June 8, 1990, the government filed a motion to continue sentencing stating that the defendant was actively engaged in assisting law enforcement and requesting an additional 45 days to complete this assistance. The motion was stamped "Denied and So Ordered" on June 12, 1990. On June 18, Deppe also filed a motion to continue sentencing based on the fact that although he was cooperating with the government, he had been unable to complete his government assignment due to personnel changes at the U.S. Attorney's Office. This motion was stamped "Denied and So Ordered" on June 18, 1990.

The government filed a response to Deppe's motion to continue on June 19, and reiterated its requests orally at the sentencing hearing on June 20, 1990. The court again denied the motion. At sentencing, defense counsel and the prosecutor alluded to defendant's cooperation. The AUSA stated, however, that he was not in a position to file a U.S.S.G. § 5K.1[2] motion to depart downward from the Guidelines because Deppe had not yet completed his cooperation with the government. The court responded that the AUSA could file such a motion at any time. The district judge then sentenced Deppe, under the Guidelines, to 188 months imprisonment, three years supervised release, and a $500 per month fine. The judge then noted that he anticipated receipt of a section 5K.1 motion based on Deppe's future cooperation.

On May 8, 1991, the government filed a motion to reduce sentence pursuant to Rule 35(b). In its motion, the government set out a portion of the facts detailing Deppe's cooperation with the government. Deppe filed a request for a hearing on the government's Rule 35(b) motion so that the court could be fully apprised of the extent of his cooperation.

The district court wrote "Denied" on Deppe's motion to conduct an evidentiary hearing. The court, without further expla-

---

**2.** U.S.S.G. § 5K1.1 states:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
 (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
 (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
 (3) the nature and extent of the defendant's assistance;
 (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
 (5) the timeliness of the defendant's assistance.

nation, wrote "Granted" on the government's Rule 35(b) motion and reduced Deppe's sentence by one year from 188 months (15 years and 8 months) to 176 months (14 years and 8 months). Subsequently, the government and Deppe filed a joint motion to reconsider the court's decision. The parties stressed that the motion itself had not outlined the full extent of Deppe's cooperation because the government had expected the court to conduct an evidentiary hearing at which federal agents would have testified to the full extent of defendant's cooperation. In this motion, the parties noted that:

> under the plea agreement, the Government is required to make known the full nature and extent of the Defendant's cooperation, that this information has not yet been fully communicated to the Court, and that the Court should have full knowledge of the extent of such cooperation, along with all other mitigating factors that both sides may wish to present.

On June 5, 1991, the court stamped this motion "Denied and So Ordered." Deppe is currently incarcerated.

## II. DISCUSSION

■ In each of these cases, the defendants and the government challenge the district court's refusal to grant an evidentiary hearing on the issue of defendants' respective cooperation. Generally, a defendant may not appeal a court's refusal to make a downward departure in sentencing. *United States v. Fossett,* 881 F.2d 976, 979 (11th Cir.1989). The parties concede that they may not challenge, *on the merits,* the district court's denial of their Rule 35 motions. The parties, however, correctly note that they are not, per se, appealing the district court's denial of their Rule 35 motions. Instead, they are appealing the district court's refusal to grant an evidentiary

hearing and its perfunctory consideration of their Rule 35 sentence reduction motions.

■ The government and the defendants also agree that the decision whether or not to grant an evidentiary hearing generally is committed to the discretion of the district court. *United States v. Winfield,* 960 F.2d 970, 972 (11th Cir.1992); *United States v. Nerren,* 613 F.2d 572, 573 (5th Cir.1980). However, a district court's discretion is "severely" curtailed once that court accepts a plea bargain.[3] *United States v. Runck,* 601 F.2d 968, 970 (8th Cir.1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980) ("a plea bargain severely limits the discretion of a sentencing judge"); *United States v. Burruezo,* 704 F.2d 33, 38 (2nd Cir.1983). In fact, "[o]nce the court unqualifiedly accepts [a plea] agreement it too is bound by the bargain." *United States v. Holman,* 728 F.2d 809 (6th Cir.), *cert. denied,* 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984); *United States v. Cruz,* 709 F.2d 111, 115 (1st Cir. 1983). We agree with the D.C. Circuit's statement that:

> "[t]he judge's faithful observance of the requirements of Rule 11 is just as vital to the fairness and efficiency of the process as the prosecutor's compliance. She has a primary duty under that rule to insure not only that the terms of the bargain are understood by the defendant but that they are adhered to by both sides, *as well as by the court itself.*"

*United States v. Blackwell,* 694 F.2d 1325, 1339 (D.C.Cir.1982) (emphasis added).

■ In the cases of Yesil, Golan, and Deppe, the district court accepted plea bargains that specifically obligated the government to "make known to the court ... the nature and extent of the defendant's cooperation." Pursuant to the above reasoning, once the judge accepted this plea

---

**3.** A trial judge also has the discretion to reject a plea bargain. Fed.R.Crim.Pro. 11(e)(4); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). However, if the court chooses to reject the bargain, the defendant has the parallel right to withdraw his guilty plea. Fed.R.Crim.Pro. 11(e)(4). In the instant cases, the judge accepted the pleas and

indeed gave every indication that the government would be permitted to fulfill the terms of the plea through a Rule 35 motion and a hearing in support of such motion. Because the judge did not expressly reject the pleas, the defendants involved in this appeal were never presented with the Rule 11 option of withdrawing their guilty pleas.

agreement, he was similarly obligated to accept the government's proffered information concerning the "nature and extent of the defendant's cooperation." The district court therefore lost its usual discretion to determine whether or not to grant a party's request for an evidentiary hearing and abused this limited discretion when he refused to grant the requested Rule 35 evidentiary hearings.[4]

 If the procedural requirements of Rule 11(e) are not complied with, and a defendant consequently is denied the benefit of the agreement for which he bargained, the defendant is entitled to relief. *Burruezo*, 704 F.2d at 38; *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"). Indeed, it is a denial of due process to assure a defendant that he will receive a certain process and then to renege on that promise or merely pay it lip service. *United States v. Thomas*, 580 F.2d 1036 (10th Cir.1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1051, 59 L.Ed.2d 92 (1979). Relief in these instances may come in the form of specific performance of the plea agreement or in the opportunity to withdraw the guilty plea. *Santobello*, 404 U.S. at 263, 92 S.Ct. at 499. Given that Deppe, Yesil and Golan have already completed their obligations under the agreement and have irretrievably subjected themselves to great danger, we believe the defendants' rights are best redressed by specific performance of the plea agreement in the form of evidentiary hearings before a different district court judge.[5] At these hearings, the district court should permit the government to present complete information concerning the "nature and extent" of each defendant's cooperation.

## III. CONCLUSION

For the above reasons, we REVERSE the district court's denial of the parties' requests for evidentiary hearings on the issue of cooperation. Accordingly, we REMAND for hearings and Rule 35 considerations consistent with this opinion.

HATCHETT, Circuit Judge, dissenting:

I dissent from the majority's holding that a district court must grant an evidentiary hearing whenever the government so requests. With this ruling, the majority snatches away the last bit of discretion district court judges possess in the sentencing process. I also have many additional

---

**4.** In his dissent, Judge Hatchett writes: "[o]bviously, a party may no more appeal the denial of an evidentiary hearing that it may appeal an objection overruled." I respectfully disagree with this statement. As mentioned above, a party may indeed appeal a district court's refusal to grant a hearing. Although that decision is generally reviewed under the abuse of discretion standard, the district court's discretion was severely curtailed in this instance by the court's acceptance of the plea bargains. However, even if the conventional abuse of discretion standard applied here, we would still reverse the district court. Given that the district court accepted the plea bargains and that the defendants relied on these agreements during their extensive cooperation with the government, the district court did abuse its discretion in refusing to even hear the information concerning cooperation.

The dissent also argues that it was the government, not the district court, that breached the plea agreement when it failed to include all the evidence of cooperation in its Rule 35 motions. However, in the joint motion submitted by Yesil, Golan and the government, the parties explained their reasons for not including all relevant information at that time. They stressed the sensitive nature of the ongoing investigation and consequently requested an *in camera* hearing during which the parties could privately provide the court with full details of the highly sensitive information.

**5.** The practice of remanding to a different sentencing judge following the breach of a plea agreement has been approved by the Supreme Court and by this Circuit. *Santobello*, 404 U.S. at 263, 92 S.Ct. at 499; *United States v. Torkington*, 874 F.2d 1441, 1447 (11th Cir.1989); *United States v. Boatner*, 966 F.2d 1575 (11th Cir.1992); *see also United States v. Vale*, 496 F.2d 365 (5th Cir.1974). The *Torkington* test requires that a court consider at least three elements in determining whether to reassign the case to a different judge on remand: (1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; and (3) whether reassignment would entail waste out of proportion to gains realized from reassignment. *Id.* at 1447.

concerns regarding the issue before this court, this court's jurisdiction, and the government's activities in this case.

## I. The Issue

The majority states the issue as "whether a district court may prevent the government from fulfilling its obligations under a plea agreement after that court has accepted the agreement and consequently not provided the defendants an opportunity to withdraw their guilty pleas." Because the majority poses the wrong question, it announces the wrong answer. The issue is simply whether a district court must grant an evidentiary hearing at the government's request. The majority says, "Yes"; I say, "No."

## II. Jurisdiction

My first concern is the jurisdictional basis for this appeal. After posing the wrong issue, the majority states that the defendants and the government appeal the failure of the district court to grant an evidentiary hearing. Obviously, a party may no more appeal the denial of an evidentiary hearing than it may appeal an objection overruled. If this court does have jurisdiction from the denial of an evidentiary hearing, I still question the wisdom of allowing an appeal from every denial of an evidentiary hearing in a sentencing context—especially a government appeal. It has long been established that in a criminal case, the government may only appeal pursuant to the grounds provided in 18 U.S.C. § 3731.[1]

As to Deppe, sentenced under the Sentencing Guidelines, no appeal is possible because the sentence has not been "imposed in violation of law," or "as a result of an incorrect application of the sentencing guidelines," or "imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U.S.C.

§ 3742(a)–(b). No appealable order exists in this case.

## III. The Offenses and Sentences

These appellants are drug felons.[2] As to Yesil and Golan, a grand jury returned a five count indictment charging them and two co-conspirators with conspiracy to possess with intent to distribute, and distribution of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 846. After entering into written plea agreements, Yesil and Golan entered guilty pleas to one count of the indictment. The district court sentenced them to six years imprisonment, a three year special parole term, a fine of $150,000, and a $50 special assessment.

As to Deppe, a grand jury returned a one count indictment charging him and a co-conspirator with conspiracy to import into the United States, from a place outside thereof, approximately 10,445 pounds of marijuana, in violation of 21 U.S.C. §§ 952 and 963, and 18 U.S.C. § 3238. Pursuant to a written plea agreement, Deppe entered a plea of guilty. The court originally sentenced Deppe to 188 months imprisonment followed by three years of supervised release, assessed $500 per month as costs of imprisonment, and a $50 special assessment. The majority finds no error in the sentences. The district court was correct on the merits of the rule 35 motions.

## IV. The Government's Activities

It is difficult to understand what more the government wanted the district court to do in this case—other than let the government control the entire sentencing process including the terms of the sentences. For example, the government wanted to delay sentencing, and although the district court would not delay sentencing, the district court did delay the prison reporting date for the exact length of time

---

1. The government takes a strange position in this case. Its position is that the district court caused it to breach its plea agreements. If the government is right, then these appellants should have the right to withdraw their guilty pleas and go to trial. The remedy would not necessarily be merely to have the appellants resentenced.

2. This case illustrates the frustration district court judges are experiencing when forced to impose tough mandatory sentences on minor role felons and are unable to impose fair sentences on major role felons due to the government's manipulations.

that the government requested—six months. The district court also noted that after the reporting date, it would still entertain a rule 35 motion. True to its promise, the district court did entertain a rule 35 motion.

It is not difficult to determine what the government did not do in this case. It did not comply with the plea agreements. The government boldly states in its brief that it did not put into its motions seeking a reduction of the sentences to the full extent of the appellants' cooperation. Likewise, the majority just as boldly states in its opinion the same thing, but faults the district court for not knowing all of the facts. If a plea agreement violation occurred in this case, it occurred when the government chose to place before the district court less than all of the evidence regarding cooperation.

In the Deppe case, the government refused to file a U.S.S.G. 5K1.1 motion when the district court invited it to do so. In spite of the government's failure to accept the invitation, the district court left the door open for the government to file such a motion. No 5K1.1 motion was ever filed. Moreover, for some unexplainable reason, even when the government filed its rule 35(b) motion, it only included "some" of the facts regarding cooperation. Again, if a breach of the plea agreement occurred, the government willfully caused the breach—not the district court.[3] According to the majority, the government could have kept the district court from imposing the sentences for as long as the government desired through the calculated ruse of withholding facts.

This case comes down to nothing more than the government insisting that the district court conduct an evidentiary hearing. The law regarding evidentiary hearings is clear. The decision to grant an evidentiary hearing is committed to the discretion of the district court. *United States v. Winfield*, 960 F.2d 970 (11th Cir.1992); *United States v. Nerrin*, 613 F.2d 572 (5th Cir. 1980). In accordance with existing law, the district court in this case properly denied the government an evidentiary hearing. The majority now bootstraps that denial of an evidentiary hearing up to an error of constitutional dimensions.

## V. The Reach of this Ruling

Not only does the majority allow an appeal from a failure to grant an evidentiary hearing and hold that a district court must grant government requests for evidentiary hearings, but the majority goes on to allow an appeal from a rule 35 motion which the district court granted. As to Deppe, the district court granted the rule 35 motion and reduced the sentence. Even though the district court granted the motion, the government and Deppe have convinced the majority that they have been harmed. The truth is that the government wanted a greater reduction. On this issue, the majority simply accepts the government's position that the one-year reduction in sentence was not a great enough reduction. As to Deppe, sentenced under the guidelines, the guidelines make clear that no appeal may be taken to adjust a sentence that is properly imposed. The problem with the majority's position is that under the guidelines, an appellate court may not reverse a sentence because it believes the sentence is too harsh or too lenient. Similarly, the length of sentences is not appealable in non-guideline cases.

## VI. The Remand

The most surprising aspect of the majority's opinion is its direction that "a different

---

**3.** I do not understand why the government was willing to give the full details of the cooperation in an open courtroom in an evidentiary hearing, but unwilling to put the details in the motions. The majority suggests that the government wanted an *in camera* evidentiary hearing. Obviously, the government could have presented the motions, with full details, for *in camera* examination. The government simply insisted on an evidentiary hearing, and attempted to force the district court to conduct such a hearing through the wilful withholding of facts. Thus, the government makes the argument: the plea agreement has been breached and the district court made me to it.

Likewise, the majority seems to find some significance in the fact that the district court judge rubber stamped the rulings rather than writing "denied" with his own hand.

district court judge" reconsider the sentences. Even if one were to agree with the majority's holding that failing to conduct an evidentiary hearing results in a breach of a plea agreement and a rule 11 violation, one would not conclude that the remand of the case must be to a different district court judge. If this case must go for resentencing to a different district court judge, then every case which results in a sentencing error must be remanded to a different district court judge.[4] The criminal justice system of the United States has existed for more than 200 years with the judges who make trial errors correcting them. Nothing in the majority opinion indicates why a different result must apply in this case.

I end where I began. Prior to this opinion, district court judges had little discretion left in the sentencing process. With this opinion, district court judges are prohibited from even deciding when to set sentencing hearings and what kind of hearings to conduct. The government, through this opinion, has become more than a litigant in the courts of this circuit.

---

**4.** Of course, resentencing is not necessarily the right remedy for the violation the majority finds.