UNITED STATES of America,
Plaintiff–Appellee,

v.

Engin Kamil YESIL and Yalie Golan,
Defendants–Appellants,

UNITED STATES of America,
Plaintiff–Appellee,

v.

Glenn Gert DEPPE, a/k/a "Vern"
LNU, Defendant–Appellant.

Nos. 91–3443, 91–3567.

United States Court of Appeals,
Eleventh Circuit.

Aug. 13, 1992.

Donald I. Bierman, Pamela I. Perry, Bierman, Shohat & Loewy and Perry, P.A., Miami, FL, for Yesil and Golan.

Thomas M. Dawson, Leavenworth, KS, for Deppe.

Rick L. Jancha, Karla R. Spaulding, and Cynthia R. Hawkins, Asst. U.S. Attys., Orlando, FL, for U.S.

Before KRAVITCH and HATCHETT, Circuit Judges, and BROWN *, Senior Circuit Judge.

REVISED OPINION

KRAVITCH, Circuit Judge:

## I. STATEMENT OF THE CASE

This appeal consolidates two cases, involving three defendants.[1] Each case raises the same question: whether a district court may prevent the government from fulfilling its obligations under a plea agreement after that court has accepted the agreement and consequently not provided the defendants an opportunity to withdraw their guilty pleas. The pleas involved in these cases required each defendant to cooperate with the government and obligated the government, upon completion of such cooperation, to fully apprise the court of the nature and extent of defendants' actions. In both cases, the defendants *and* the government object to the district court's failure to grant an evidentiary hearing on the issue of defendants' cooperation.

### A. *Defendants Yesil and Golan*

In August 1990 appellants Engin Yesil ("Yesil") and Yalie Golan ("Golan") pleaded guilty to an indictment charging 1) conspiracy to possess cocaine with intent to distribute and 2) distribution of cocaine. Their illegal conduct took place prior to the effective date of the United States Sentencing Guidelines (U.S.S.G.). As part of their plea agreements, defendants agreed to "co-

operate fully with the government." In return, the government agreed to "advise the Court as to the nature and extent of the Defendants' cooperation." The district court accepted the plea bargain.

The court set sentencing for November 21, 1990. On November 2, 1990, Yesil, Golan, and the government filed a joint motion to delay sentencing to enable Yesil and Golan to continue their cooperation. On November 7, 1990, the district court stamped the motion "Denied and So Ordered."

After procuring letters from both the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA), the government and defendants filed another joint motion, dated November 13, 1990, to reconsider the sentencing date. The motion stated that Yesil and Golan had infiltrated a "major heroin group" of "top priority," and that their continued cooperation was necessary. The motion stressed that neither appellant had any prior involvement with heroin but had been approached by traffickers and had used the contact with the traffickers to assist the United States. Again, the court denied the motion to continue the sentencing hearing. To accommodate the DEA, however, the court delayed Yesil and Golan's reporting date.

On November 21, 1990, the district court conducted the sentencing hearing as scheduled. The agent, Greg Lees, with whom Yesil and Golan had been cooperating was present. The following discourse took place, during which the judge indicated that a future Rule 35 motion to adjust sentencing based on cooperation would be appropriate:

> AUSA: Your Honor, this is Greg Lees, he's come up from South Florida to address the Court. You have some letters from him. He's the one that they're working with.

---

* Honorable Bailey Brown, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. This revised opinion does not affect the result as to defendants Yesil and Golan, 91-3443. The mandate issued as to those defendants on March 2, 1993.

Court: *Of course, anything that happens subsequent to this would be under Rule 35,[2] I have no problem with that.*

Agent: I don't know if your Honor wants to look at this. It's just some facts and figures of what we have done so far. Mr. Golan and Yesil to date have been responsible for locking up four people and taking about seven pounds of coke off the streets and a couple of vehicles.

Now, we're currently at this time trying to get into a very significant drug trafficking group down in South Florida and who are importing both cocaine and heroin, so of course we're quite interested in getting these people.

They've been very cooperative with me and have done everything that they should have.

Court: Do you need them in an ongoing investigation.

Agent: Yes, sir.

Court: For how long?

Agent: Well, that's going to be kind of up to your Honor. I would say give an approximate date of six months.

Court: All right. Reporting date.

Defense counsel: And I would point out, Judge, that as Mr. Lees can confirm, that these are all new people. In other words, they didn't just turn on their former colleagues, they had been retired and they went out and risked—

Court: Of course, they were in significantly before they retired.

Defense counsel: I understand that.

AUSA: I think these people that were not known to us, I can confirm that. They're people that we had no information on at all, but for their cooperation, we would not have known about.

Court: All right.

[End of Bench Conference]

Following the agent's testimony, the judge heard allocution by the appellants, statements by their family members, and a brief statement by the prosecutor that:

[defendants] have given good information and they've been fully cooperative with the FBI and the government does consider their assistance was of major import.

The court then sentenced the Defendants to six years in prison, three years special parole, and a $150,000 fine. The court set a voluntary surrender date of June 1, 1991.

Subsequent to the sentencing, and pursuant to their plea agreements, Yesil and Golan continued to assist the government with drug investigations. On March 20, 1991, Yesil and Golan filed a motion, in which the government joined, for reduction of sentence pursuant to Rule 35(b). In the motion, the parties urged the court to grant an evidentiary hearing so that testimony could be presented detailing the nature and extent of cooperation by Yesil and Golan. The motion included some of the facts concerning their cooperation, but in no way detailed the full extent of their infiltration. The motion stressed the need for an *in camera* hearing due to the sensitive nature of the ongoing investigation:

Attached to this motion as Exhibit 1 and Exhibit 2 are letters from Detective Lees and Agent Bolan, setting forth the Defendants' cooperation and the fact that the Defendants are actively involved in several ongoing investigations. In view of the sensitive nature of the Defendants continuing cooperation, the letters are by necessity mere abbreviation of the Defendants' extensive activity. As such, the Defendants would request an opportunity to present in detail to the Court the nature and extent of their cooperation. *Assistant United States Attorney Cynthia Hawkins has authorized us to*

---

**2.** Fed.R.Crim.P. 35(b) provides:

(b) Correction of Sentence for Changed Circumstances. The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an of-

fense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court's authority to lower a sentence under this subdivision includes the authority to lower such sentence to a level below that established by statute as a minimum sentence.

*represent to this Honorable Court that the Government joins in the Defendants request for a hearing on this motion in order to present evidence in support of the Defendants Motion for Mitigation of Sentence.*

While security considerations prevent the Defendants from going into detail, the Defendants would point out to the Court that since their sentencing date, they have initiated at least *eleven (11) drug trafficking cases* involving in excess of approximately 22 kilo grams [sic] of cocaine and one heroine [sic] case. The Defendants have also actively engaged in continuing negotiations with drug traffickers and there may be additional information to supply to the court at the time of a hearing on this motion. Again, the various details of these cases will be provided for the Court at an in-camera hearing.

(emphasis in original). The court denied this motion, stamping it "Denied and So Ordered." Yesil, Golan and the government then filed a joint motion for reconsideration of the court's order. That motion was also stamped "Denied and So Ordered."

On April 17, 1991, the government moved to extend the defendants' reporting date, citing the continued need for the appellants' cooperation. Four days later the district court stamped that motion "Denied and So Ordered." Yesil and Golan surrendered as originally ordered on June 1, 1991.

### B. Defendant Deppe

Similar facts underlie the appeal of Glenn Gert Deppe ("Deppe"). Defendant Deppe pleaded guilty to conspiracy to import 10,445 pounds of marijuana. The plea agreement provided in part that:

> At the time of sentencing, the government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation, and any other mitigating circumstances indicative of the defendant's intent to rehabilitate himself and to assume the fundamental civic duty of reporting crime.

The trial court scheduled Deppe's sentencing for June 20, 1990.

On June 8, 1990, the government filed a motion to continue sentencing stating that the defendant was actively engaged in assisting law enforcement and requesting an additional 45 days to complete this assistance. The motion was stamped "Denied and So Ordered" on June 12, 1990. On June 18, Deppe also filed a motion to continue sentencing based on the fact that although he was cooperating with the government, he had been unable to complete his government assignment due to personnel changes at the U.S. Attorney's Office. This motion was stamped "Denied and So Ordered" on June 18, 1990.

The government filed a response to Deppe's motion to continue on June 19, and reiterated its requests orally at the sentencing hearing on June 20, 1990. The court again denied the motion. At sentencing, defense counsel and the prosecutor alluded to defendant's cooperation. The AUSA stated, however, that he was not in a position to file a U.S.S.G. § 5K1.1[3] motion to depart downward from the Guidelines because Deppe had not yet completed his cooperation with the government. The court responded that the AUSA could file such a motion at any time. The district

---

**3.** U.S.S.G. § 5K1.1 states:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

    (1) the court's evaluation of the significance and usefulness of the defendant's assistance,

taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

judge then sentenced Deppe, under the Guidelines, to 188 months imprisonment, three years supervised release, and a $500 per month fine. The judge then noted that he anticipated receipt of a section 5K1.1 motion based on Deppe's future cooperation.

On May 8, 1991, the government filed a motion to reduce sentence pursuant to Rule 35(b). In its motion, the government set out a portion of the facts detailing Deppe's cooperation with the government. Deppe filed a request for a hearing on the government's Rule 35(b) motion so that the court could be fully apprised of the extent of his cooperation.

The district court wrote "Denied" on Deppe's motion to conduct an evidentiary hearing. The court, without further explanation, wrote "Granted" on the government's Rule 35(b) motion and reduced Deppe's sentence by one year from 188 months (15 years and 8 months) to 176 months (14 years and 8 months). Subsequently, the government and Deppe filed a joint motion to reconsider the court's decision. The parties stressed that the motion itself had not outlined the full extent of Deppe's cooperation because the government had expected the court to conduct an evidentiary hearing at which federal agents would have testified to the full extent of defendant's cooperation. In this motion, the parties noted that:

> under the plea agreement, the Government is required to make known the full nature and extent of the Defendant's cooperation, that this information has not yet been fully communicated to the Court, and that the Court should have

full knowledge of the extent of such cooperation, along with all other mitigating factors that both sides may wish to present.

On June 5, 1991, the court stamped this motion "Denied and So Ordered." Deppe is currently incarcerated.

## II. DISCUSSION

■ In each of these cases, the defendants and the government object to the district court's refusal to grant an evidentiary hearing on the issue of defendants' respective cooperation. Generally, a defendant may not appeal a court's refusal to make a downward departure in sentencing. *United States v. Fossett*, 881 F.2d 976, 979 (11th Cir.1989). Appellants concede that they may not challenge, *on the merits*, the district court's denial of their Rule 35 motions. Appellants, however, correctly note that they are not, per se, appealing the district court's denial of their Rule 35 motions. Instead, they are appealing the district court's breach of the plea agreement effectuated by its refusal to grant an evidentiary hearing and its perfunctory consideration of their Rule 35 sentence reduction motions.[4]

■ The government and the defendants also agree that the decision whether or not to grant an evidentiary hearing generally is committed to the discretion of the district court. *United States v. Winfield*, 960 F.2d 970, 972 (11th Cir.1992); *United States v. Nerren*, 613 F.2d 572, 573 (5th Cir.1980). However, a district court's discretion is "severely" curtailed once that court accepts a plea bargain.[5] *United States v.*

4. Judge Hatchett, in dissent, questions the jurisdictional basis for this appeal. He notes correctly that we do not take jurisdiction over Yesil and Golan under 18 U.S.C. § 3731 or § 3742 which provide for appeals by the government and defendants from sentences imposed by a district court under the Sentencing Guidelines. Neither Yesil nor Golan were sentenced under the Guidelines. We do take jurisdiction, however, under 28 U.S.C. § 1291. *See United States v. Winfield*, 960 F.2d 970, 972 (11th Cir.1992). In contrast, because the Sentencing Guidelines govern Deppe's case and the allegations made raise the question of whether the sentence was imposed in violation of law, we take jurisdiction under 18 U.S.C. § 3742(a)(1). *See also United*

*States v. Atwood*, 963 F.2d 476, 478 (1st Cir. 1992) ("An appellate court has jurisdiction, on direct review, to consider an appeal that seeks to ascertain whether the government satisfactorily complied with the terms of a plea bargain.").

5. A trial judge also has the discretion to reject a plea bargain. Fed.R.Crim.P. 11(e)(4); *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). However, if the court chooses to reject the bargain, the defendant has the parallel right to withdraw his guilty plea. Fed.R.Crim.P. 11(e)(4). In the instant cases, the judge accepted the pleas and indeed

*Runck,* 601 F.2d 968, 970 (8th Cir.1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980) ("a plea bargain severely limits the discretion of a sentencing judge"); *United States v. Burruezo,* 704 F.2d 33, 38 (2nd Cir.1983). In fact, "[o]nce the court unqualifiedly accepts [a plea] agreement it too is bound by the bargain." *United States v. Holman,* 728 F.2d 809, 813 (6th Cir.), *cert. denied,* 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984); *accord United States v. Cruz,* 709 F.2d 111, 115 (1st Cir.1983). We agree with the D.C. Circuit's statement that:

> [t]he judge's faithful observance of the requirements of Rule 11 is just as vital to the fairness and efficiency of the process as the prosecutor's compliance. She has a primary duty under that rule to insure not only that the terms of the bargain are understood by the defendant but that they are adhered to by both sides, *as well as by the court itself.*

*United States v. Blackwell,* 694 F.2d 1325, 1339 (D.C.Cir.1982) (emphasis added).

██ In the cases of Yesil, Golan, and Deppe, the district court accepted plea bargains that specifically obligated the government to "make known to the court ... the nature and extent of the defendant's cooperation." Pursuant to the above reasoning, once the judge accepted this plea agreement, he was similarly *obligated* to

accept the government's proffered information concerning the "nature and extent of the defendant's cooperation." The district court therefore lost its usual discretion to determine whether or not to grant a party's request for an evidentiary hearing and abused this limited discretion when he refused to grant the requested Rule 35 evidentiary hearings.[6]

██ If a plea agreement is accepted by the district court and a defendant subsequently is denied the benefit of the agreement for which he bargained, the defendant is constitutionally entitled to relief. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *see also Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984) (broken government promise that induced guilty plea implicates Due Process Clause); *United States v. Goldfaden,* 959 F.2d 1324, 1328 (5th Cir.1992) ("Defendants ... give up constitutional rights in reliance on promises made by prosecutors, implicating the Due Process Clause once the court accepts their pleas."); *Burruezo,* 704 F.2d at 38. Relief in these instances may come in the form of specific performance of the plea

---

gave every indication that the government would be permitted to fulfill the terms of the plea through a Rule 35 motion and a hearing in support of such motion. Because the judge did not expressly reject the pleas, the defendants involved in this appeal were never presented with the Rule 11 option of withdrawing their guilty pleas.

**6.** In his dissent, Judge Hatchett writes: "[o]bviously, a party may no more appeal the denial of an evidentiary hearing than it may appeal an objection overruled." We respectfully disagree with this statement. As mentioned above, a party may indeed appeal a district court's refusal to grant a hearing. Although that decision is generally reviewed under the abuse of discretion standard, the district court's discretion was severely curtailed in this instance by the court's acceptance of the plea bargains. However, even if the conventional abuse of discretion standard applied here, we would still reverse the district court. Given that the district court accepted the

plea bargains and that the defendants relied on these agreements during their extensive cooperation with the government, the district court did abuse its discretion in refusing to even hear the information concerning cooperation.

The dissent also argues that it was the government, not the district court, that breached the plea agreement when it failed to include all the evidence of cooperation in its Rule 35 motions. However, in the joint motion submitted by Yesil, Golan and the government, the parties explained their reasons for not including all relevant information at that time. They stressed the sensitive nature of the ongoing investigation and consequently requested an *in camera* hearing during which the parties could privately provide the court with full details of the highly sensitive information. Judge Hatchett's claim that the government was willing to "give the full details of the cooperation in an open courtroom in an evidentiary hearing," is not supported by the record. Dissent at n. 3. An *in camera* hearing was sought.

agreement or in the opportunity to withdraw the guilty plea. *Santobello*, 404 U.S. at 263, 92 S.Ct. at 499. Given that Deppe, Yesil and Golan have already completed their obligations under the agreement and have irretrievably subjected themselves to great danger, we believe the defendants' rights are best redressed by specific performance of the plea agreement in the form of evidentiary hearings before a different district court judge.[7] At these hearings, the district court should permit the government to present complete information concerning the "nature and extent" of each defendant's cooperation.[8]

## III. CONCLUSION

For the above reasons, we REVERSE the district court's denial of the parties' requests for evidentiary hearings on the issue of cooperation. Accordingly, we REMAND for hearings and Rule 35 consideration consistent with this opinion.

HATCHETT, Circuit Judge, dissenting:

I dissent to this revised majority opinion for the same reasons I dissented to the original opinion, reported as *United States v. Yesil, et al.*, 968 F.2d 1122, 1128 (11th Cir.1992).

---

**7.** The practice of remanding to a different sentencing judge following the breach of a plea agreement has been approved by the Supreme Court and by this circuit. *Santobello*, 404 U.S. at 263, 92 S.Ct. at 499; *United States v. Boatner*, 966 F.2d 1575 (11th Cir.1992); *United States v. Torkington*, 874 F.2d 1441, 1447 (11th Cir.1989); *see also United States v. Vale*, 496 F.2d 365 (5th Cir.1974). The *Torkington* test requires that a court consider at least three elements in determining whether to reassign the case to a different judge on remand: (1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice and (3) whether reassignment would entail waste out of proportion to gains realized from reassignment. *Id.* at 1447. In fact, the

Fifth Circuit *requires* the assignment of a different sentencing judge on a remand for specific performance of the plea agreement. *United States v. Goldfaden*, 959 F.2d 1324, 1328–29 (5th Cir.1992).

**8.** Contrary to what Judge Hatchett asserts in his dissent, we pass no judgment on the appropriate amount—if any—of a reduction in Deppe's sentence. We remand this case for the district court to comply with the binding plea agreement. That means that the district court should permit the government to present complete information concerning the "nature and extent" of each defendant's cooperation as a part of its Rule 35 consideration. What the district court does after receiving that information is not at issue in the instant appeal.